## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------
                                    :
    GERALD R. THOMPSON, JR.,        :
                                    :
            Plaintiff,              :    CIVIL NO. 12-4755(NLH)
                                    :
       v.                           :
                                    :         **OPINION**
    COMMISSIONER OF                 :
    SOCIAL SECURITY,                :
                                    :
            Defendant.              :
                                    :
-----------------------------------

**APPEARANCES:**

ROBERT ANTHONY PETRUZZELLI
JACOBS, SCHWALBE & PETRUZZELLI, PC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003
    *Attorney for Plaintiff*

JOANNE JACKSON
SPECIAL ASSISTANT UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
26 FEDERAL PLAZA, ROOM 3904
NEW YORK, NY 10278
    *Attorney for Defendant*

**HILLMAN,** District Judge

    This matter comes before the Court pursuant to Section 205(g)

of the Social Security Act, as amended, 42 U.S.C. § 405(g), to

review the final decision of the Commissioner of the Social

Security Administration, denying the application of Plaintiff for

Disability Insurance Benefits and Supplemental Security Income

("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his April 21, 2006 application for benefits for the alleged onset of disability of March 23, 2006. For the reasons stated below, this Court will affirm the ALJ's decision.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on March 21, 1975, and he suffers from epilepsy, generalized anxiety disorder, and panic attacks.  He previously worked in 2008 and 2009 at a supermarket stocking shelves.

After a hearing before an ALJ on September 8, 2008, it was determined that Plaintiff was not disabled.  Plaintiff appealed the decision, and the Appeals Council denied review rendering the ALJ's decision final.  Plaintiff sought this Court's review, but while his case was pending, the parties entered in a consent order on June 4, 2010 remanding the case for a rehearing, which was held on August 23, 2011.  After that hearing, on November 7, 2011, the ALJ again determined that Plaintiff was not disabled.  A request for review by the Appeals Council was denied.  Plaintiff now seeks this Court's review of the November 7, 2011 decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the  Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp.

277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health & Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting <u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. <u>Id.</u> (citing <u>Van Horn v. Schweiker</u>, 717 F.2d 871, 873 (3d Cir. 1983)); <u>Cotter v. Harris</u>, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, <u>Fargnoli</u>, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of

4

evidence included in the record," <u>Hur v. Barnhart</u>, 94 Fed. Appx. 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams</u>, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy,

5

regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

## C. Analysis

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One). The ALJ next found that Plaintiff's epilepsy was severe, but he did not find that his anxiety and panic disorder were severe (Step Two). The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three). At Step Four, the ALJ found that even though Plaintiff was not capable of performing his previous job as a carpenter,[1] the ALJ

_____

[1]It appears that Plaintiff's most recent employment was a supermarket shelf-stocker, but that at some point in the past Plaintiff worked as a carpenter. As the ALJ explains in his

found that Plaintiff had the residual functional capacity (RFC) to perform unskilled work (Step Five).

Plaintiff presents several arguments for review, including that the ALJ erred at Step Two by not considering his panic disorder and generalized anxiety order to be "severe," that the ALJ improperly discounted Plaintiff's testimony of his symptom-related limitations, and that the ALJ erred at Step Five by not consulting a vocational expert.  The Court finds that the ALJ provides a meaningful explanation of his decision, including his determination about the severity of Plaintiff's conditions, Plaintiff's credibility, Plaintiff's residual functional capacity to perform work, and Plaintiff's ability to perform unskilled work.  The Court will therefore affirm the ALJ's decision.

First, with regard to Plaintiff's argument that the ALJ improperly determined that Plaintiff's panic and anxiety disorders were not severe, the Court disagrees.  As explained by the ALJ, in order to find that a mental disorder is "severe" under the Regulations, the ALJ must consider four functional areas: (1) daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of decompensation.  The ALJ noted that

_____

decision, because Plaintiff is no longer capable of working with machinery, Plaintiff cannot perform his past relevant work as a carpenter.  (R. at 293.)  The ALJ does not make the determination that Plaintiff cannot return to his position as a supermarket self-stocker.

Plaintiff had mild to no limitations in all four areas: Plaintiff could properly groom himself, he had normal social interactions, he had a friendly demeanor, even though he had a mild limitation in following complex commands, his speech was intact and he watched television and enjoyed being on the computer, he had not experienced episodes of decompensation that had been of extended duration, and he had never received specialized psychological treatment or therapy. Based on these findings that Plaintiff experienced no more than mild limitations from his claimed panic and anxiety disorders, the ALJ found that they were "non-severe." ®. at 287, citing 20 C.F.R. §§ 404.1520(a)(d)(1) and 416.920(a)(d)(1).)

Even if the Court were to credit Plaintiff's argument that the Step Two analysis should be applied to simply weed out de minimus claims and not discount significant disabilities, and that Plaintiff's panic and anxiety disorders should be considered "severe" under the Step Two framework, see Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987); Bailey v. Sullivan, 885 F.2d 52, 56-57 (3d Cir. 1989), the ALJ's extensively detailed recounting of the medical evidence and Plaintiff's subjective testimony, which includes the evidence relating to Plaintiff's mental disorders, substantially supports his ultimate conclusion that Plaintiff retains the RFC to perform unskilled work.

In the ALJ's Step Four analysis, which is the next step after the Step Three finding that Plaintiff's disorders did not meet a listed impairment - a finding which Plaintiff does not contest - the ALJ first discusses Plaintiff's seizure disorder. He cites Plaintiff's medical history, including noting that from 2006 through September 2010, Plaintiff experienced a total of three seizures, and that for one year he had been off his medication and experienced one seizure and increasing panic-like attacks. The ALJ ultimately notes that in March 2010 Plaintiff's neurologist, Dr. Tracy Wang, conducted an extensive EEG work-up for seizures in adult life, and the findings were within normal limits. Plaintiff's neurologist also found that his seizures were kept under control with medication.

Despite finding that Plaintiff's panic and anxiety disorders were not "severe" in Step Two, the remainder of the ALJ's extensive Step Four analysis of Plaintiff's functional capacity mostly relates to his mental condition, rather than his epilepsy, as his functional capacity is relatively unaffected by his seizure disorder.[2] The ALJ points out that Plaintiff's treating physicians had not made a diagnosis of panic attacks or generalized anxiety disorder, but that Plaintiff had reported panic attacks and anxiety

---

[2]As noted by the ALJ, no clinical medical findings connect Plaintiff's seizure disorder to his panic and anxiety condition. (R. at 291.)

to his physicians.  The ALJ then recounts Plaintiff's testimony at
the hearing regarding his mental state and how it affects his daily
life, as well as what Plaintiff has related to his doctors and the
state consultative physicians about his condition.  During this
recitation, the ALJ notes several inconsistencies in Plaintiff's
testimony relating to the effects of his claimed disorders.  (See
R. at 291.)  The ALJ also notes that Plaintiff has never sought
treatment from a psychologist or psychiatrist, which had been
repeatedly recommended by his treating physicians.  ®. at 289.)

The ALJ then gives "great weight" to Plaintiff's treating
family physician, Dr. Brattelli, whom Plaintiff last saw on April
11, 2011.  Dr. Brattelli diagnosed Plaintiff with generalized
convulsive epilepsy, he prescribed a drug regimen to control his
epilepsy, he noted that Plaintiff's compliance with his medications
had been good, and he stated that Plaintiff's appearance was well-
appearing, well-nourished, and in no acute distress.  ®. at 290.)

Dr. Brattelli also completed a medical source statement of
Plaintiff's ability to perform work-related physical activities.
He found that Plaintiff could sit, stand and walk without hourly
limitation, he could continuously lift up to 100 pounds, he could
use his hands for grasping, pushing and pulling, and fine
manipulating, and he could bend, stoop, squat, crawl, and reach.
Dr. Brattelli noted, however, that Plaintiff could not climb or

work on unprotected heights, and that he had a mild restriction around moving machinery and automotive equipment.  He had no restriction regarding exposure to dust, fumes and gases.  ®. at 290.)  As noted above, Dr. Brattelli diagnosed Plaintiff with generalized epilepsy with a past history of panic attacks, but he did not provide a current diagnosis of panic attacks or generalized anxiety disorder.  ®. at 291.)

In his decision, the ALJ also gives extensive consideration to Plaintiff's treating neurologist, Dr. Wang.  As also noted above, the results of Plaintiff's extensive EEG work-up for seizures were within normal limits, and that any seizures were kept under control with medication.  Dr. Wang's report also revealed that no objective medical evidence connected his seizure disorder with his panic attacks.  ®. at 290.)

The ALJ further considered the report of state consultative physician, Dr. Lewis Lazarus, who conducted an evaluation of Plaintiff on May 15, 2011.  Dr. Lazarus diagnosed Plaintiff with panic disorder without agoraphobia and generalized anxiety disorder.  He also assessed Plaintiff's ability to do work-related activities, and although Plaintiff was mildly limited in his ability to respond appropriately to usual work situations and to changes in a routine work setting, Plaintiff was not limited in his abilities to carry out simple instructions.  The ALJ gave this

opinion "great weight," as the ALJ found it consistent with the medical evidence. (R. at 292.)

Plaintiff complains that the ALJ did not consider the full opinion of the state consultative physician, Dr. Kenneth Goldberg, who issued a report on March 8, 2007. Plaintiff points out that the ALJ did not mention in his decision that Dr. Goldberg reported that Plaintiff had difficulty remembering details, had a histrionic quality to his speech, and had a disorientated thought process and impaired persistence. The ALJ did, however, review Dr. Goldberg's report, and noted the inconsistencies of statements Plaintiff made to Dr. Goldberg (that Plaintiff recently--in March 2007--had a panic attack in the bathtub so he would now only take showers, not baths), with the reports of Plaintiff's fiancée (who noted that prior to March 2007, Plaintiff only took showers), and the August 2011 hearing, where Plaintiff said he took baths because of panic attacks in the showers. (R. at 291.)

Even if the ALJ did not specifically consider the points in Dr. Goldberg's March 2007 report that Plaintiff argues the ALJ overlooked,[3] those observations of a state consultative doctor

---

[3]That the ALJ did not recount each and every medical finding does not prove that the ALJ did not consider such evidence. This is especially true when the ALJ specifically mentioned reviewing the very report that a claimant contends the ALJ did not consider a portion of. See Hur v. Barnhart, 94 Fed. Appx. 130, 133 (3d Cir. 2004). As discussed above, however, in this case, even if the Court viewed the ALJ's

13

cannot outweigh those of Plaintiff's own treating physicians or
other evidence. Indeed, a claimant's complaint about an ALJ's
consideration of the medical evidence is typically that the ALJ
improperly discounted the claimant's treating physicians' reports
and did not properly afford them the "great weight" they are
entitled if the evidence supports that determination. See
Brownawell v. Commissioner Of Social Security, 554 F.3d 352, 355
(3d Cir. 2008) (quoting Morales v. Apfel, 225 F.3d 310, 317 (3d
Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.
1999)) ("An ALJ should give 'treating physicians' reports great
weight, especially when their opinions reflect expert judgment
based on a continuing observation of the patient's condition over a
prolonged period of time.' While contradictory medical evidence is
required for an ALJ to reject a treating physician's opinion
outright, such an opinion may be afforded 'more or less weight
depending upon the extent to which supporting explanations are
provided.'"). In the atypical converse argument, Plaintiff here
wishes the ALJ to consider the state consultative report of Dr.
Goldberg with more weight than his own treating physicians. Dr.
Goldberg's report, even if fully considered, cannot independently
support the finding that Plaintiff's panic and anxiety disorders

---

decision as if he did not consider all of Dr. Goldberg's
report, those "ignored" findings do not change the substantial
evidence that supports ALJ's ultimate conclusion.

preclude his ability to work.[4]

With regard to the ALJ's determination of Plaintiff's credibility, in addition to the inconsistencies in Plaintiff's testimony at the hearing and what he told Dr. Goldberg, the ALJ also observed that Plaintiff testified that fumes at his work site caused him bad reactions, panic attacks and profuse sweating, but he did not report such problems to Dr. Brattelli, who did not place any restrictions as to Plaintiff's ability to work around fumes or gasses. (®. at 291.)

The ALJ also noted that Plaintiff reported to Dr. Wang that he had stopped working after having a seizure in April 2006 and having increased frequency of panic attacks, but that Plaintiff's earning records do not corroborate this statement. (®. at 291.) When questioned at the hearing about his work history, Plaintiff testified that he could not remember why he had no earnings in 2003, 2005, or 2006, and that he could not answer questions about why he was not working without prior knowledge of the question.

_____

[4]Plaintiff also argues that the ALJ did not consider the June 2008 report of state consultative physician, Dr. David Bogacki, who observed that Plaintiff's mood was mildly anxious, his intermediate memory was poor, and he was perspiring. (R. at 248.) For the same reasons explained above, even if the ALJ did not consider this finding, it does not cast doubt on the substantial evidence supporting the ALJ's decision. Moreover, the Court notes that Dr. Bogacki's overall diagnostic impression of Plaintiff was to rule out night terrors, and that Plaintiff may have depressive disorder or agoraphobia, but that he does not corroborate Dr. Goldberg's impression that Plaintiff had panic disorder, depression or personality disorder. (R. at 248.)

The ALJ concluded that this response, "does not show a willingness to provide spontaneous, truthful responses before the hearing officer."[5] (Id.)

After recounting throughout his decision other testimony of Plaintiff, including his lack of professional treatment for his panic and anxiety disorders, the ALJ concluded, "[T]he claimant has not been wholly credible regarding the extent of his limitations, and that his panic attacks and anxiety problems have been exaggerated." (Id.) The Court does not find that the ALJ erred in this credibility determination.[6] See Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999); 20 C.F.R. § 404.1529(c); SSR 96-7p (all explaining that the Social Security regulations provide that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not

---

[5]Plaintiff argues in his brief that he has memory problems, which are a result of his disabilities, and not evidence of untruthfulness. Although Plaintiff testified to problems with his memory, Plaintiff has not cited to medical records which document a diagnosis or objective indication of memory problems. Additionally, even without the disparity over Plaintiff's testimony as to his work history, the ALJ's overall decision is supported by other substantial evidence.

[6]The ALJ's RFC analysis demonstrates that he did not wholly discount all of Plaintiff's testimony regarding his limitations resulting from his panic and anxiety disorders. Instead, the ALJ properly explained why Plaintiff's testimony regarding his limitations were not fully creditable, and why his subjective complaints would not be accepted without reference to the other evidence.

find it credible as long as he explains why he is rejecting the testimony).

Finally, with regard to the ALJ's determination of Plaintiff's RFC and the finding that Plaintiff is capable of performing unskilled jobs, the Court finds that substantial evidence supports his findings.  As for Plaintiff's RFC, the ALJ determined that Plaintiff had the RFC to perform work at all levels of exertion; however, he could never climb ladders, ropes or scaffolds, and could not work on unprotected heights or near moving machinery.  (R. at 292.)  The ALJ found that Plaintiff had the ability to understand, remember and carry out simple job instructions and work rules, could respond appropriately to supervision, coworkers and usual work situations, he could concentrate, maintain persistence and pace, and he could adapt to routine changes in the work settings.  (Id.)  The ALJ supported this RFC assessment by the reports of Plaintiff's treating physicians, the objective medical evidence, and the lack of psychiatric or psychological treatment for anxiety or panic disorder.  (Id.)

This RFC assessment is the sole province of the ALJ, and cannot be made by any treating doctors.  20 C.F.R. § 404.1527(e) (explaining that the issue of the RFC assessment is reserved for the Commissioner and a physician's opinion thereon is not entitled to any special significance).  Nonetheless, no physician in the record concluded that Plaintiff was incapable of working, and none

precluded him from performing unskilled work.  Thus, the Court cannot find that the ALJ erred in the RFC assessment.

With regard to the ALJ's analysis of Plaintiff's ability to perform work, most of Plaintiff's challenges to the ALJ's decision are based on Plaintiff's subjective testimony regarding his limitations, and the Court has already determined that the ALJ properly considered the credibility of Plaintiff's testimony.  The remainder of his objections is based on medical evidence pointing to Plaintiff's GAF ("Global Assessment of Functioning") scores assessed by Dr. Goldberg and Dr. Bogacki.  Plaintiff claims that these GAF scores require a finding of moderate, rather than mild or no, limitations in the work function analysis.  As discussed above, these GAF scores by the state consultants in 2007 and 2008 are outweighed by other medical evidence and testimony.

Finally, Plaintiff contests the propriety of the ALJ's Step Five analysis, which comprises the Commissioner's burden of considering Plaintiff's age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  The ALJ found that Plaintiff was a younger individual (born in 1975 and age 31 at the time of his application for benefits), and that because Plaintiff has only nonexertional limitations,[7] the Medical-Vocational Guidelines

---

[7]SSR 85-15 explains, "A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction.

("GRID" rules) provide a framework for decisionmaking. (®. at 293,
citing SSR 85-15.)  The ALJ concluded that even though Plaintiff
had nonexertional limitations, those limitations had little or no
effect on the occupational base of unskilled work at all exertional
levels.  Accordingly, the ALJ found Plaintiff to be "not disabled."

Plaintiff argues that the ALJ should have considered a
vocational expert or provided examples of specific unskilled jobs
that Plaintiff was capable of, so that Plaintiff could have the
opportunity to rebut the ALJ's proofs.  In this situation, however,
the ALJ was permitted by the Rules to make his Step Five evaluation
has he did.

The Regulations explain, "Work exists in the national economy
when there is a significant number of jobs (in one or more
occupations) having requirements which you are able to meet with
your physical or mental abilities and vocational qualifications."
20 C.F.R. § 404.1566(b).  In making that determination, an ALJ is
required to take notice of reliable job information available from
various governmental and other publications, such as the Dictionary
of Occupational Titles, County Business Patterns, Census Reports,
Occupational Analyses, and Occupational Outlook Handbook.  Id.  The
ALJ may also use the services of a vocational specialist.  Id.  A

---

Nonexertional impairments may or may not affect a person's
capacity to carry out the primary strength requirements of
jobs, and they may or may not significantly narrow the range
of work a person can do."

vocational specialist, when presented with a hypothetical claimant mirroring the relevant impairments of the current disability applicant, can offer specific examples of available jobs or opine on the applicant's ability to perform a certain range of work. A vocational specialist is not required, however, in cases where a claimant has only nonexertional limitations and is capable of unskilled work. <u>See</u> SSR 85-15 ("Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for person with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis."); <u>id.</u> ("The publications listed in sections 404.1566 and 416.966 of the regulations will be sufficient vocational resources for relatively simple issues."); <u>cf.</u> SSR-96-9p (explaining that consultation with a vocation expert is encouraged when it must be determined whether a claimant is capable of performing sedentary work).

Thus, even though the ALJ could have provided specific examples of unskilled jobs available in the national and local economies, and he could have utilized a vocational expert to pinpoint those jobs based on Plaintiff's limitations as found by

the ALJ (for example, unskilled jobs that do not require heights or use of machinery), the ALJ was not required to do so.[8] Accordingly, the Court cannot find that the ALJ erred in the Step Five analysis.

Overall, even considering Plaintiff's panic and anxiety disorders to be "severe," substantial evidence supports the ALJ's determination that those disorders, singly or in combination with his seizure disorder, do not restrict Plaintiff's residual functional capacity to perform unskilled work, which he determined

_____

[8]The Court finds SSAR 01-1(3), Sykes v. Apfel, 228 F.3d 259 (3d Cir. 2000), cited by Plaintiff, to be distinguishable. There, the ALJ did not consult a VE or provide notice to the claimant that he would solely rely upon the GRID rules in the Step Five analysis. The Third Circuit reversed the district court's affirmance of the ALJ's decision, finding that sole reliance on the GRIDs when a claimant has severe nonexertional limitations, along with exertional limitations, was improper. The Sykes case is distinguishable because: (1) Plaintiff here does not have severe nonexertional limitations, (2) the court stated that it did not need to resolve the issue of whether "the Commissioner can properly refer to a ruling for guidance as to when nonexertional limitations may significantly compromise the range of work that an individual can perform," and (3) the SSA's statement on how Sykes should be applied concludes: "Under our interpretation of 20 CFR 404.1569a, 416.969a and section 200.00(e) of Appendix 2 to Subpart P of Part 404, and of SSR 83-14, we are not required to consult a vocational expert or other vocational resource in all instances in which we decide whether an individual who has a nonexertional limitation(s) is or is not disabled. . . . [Sykes] does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision."

properly in his Steps Four and Five analyses.  Therefore, the Court

will affirm the ALJ's decision.

## III. Conclusion

For the reasons expressed above, the Court finds that the

ALJ's decision is supported by substantial evidence.

Accordingly, the decision of the ALJ is affirmed.  An

accompanying Order will be issued.


Date: September 28, 2013          s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.